The receivers of Journal Square Securities Company, insolvent, seek to hold the directors of the company in damages for misfeasance and for malfeasance in office.
The charges are that the directors wrongfully paid one Cook $118,125 commission on a sale of the company's capital stock, $94,500 to Cook in excess of the purchase price of stocks bought by the company, and to the vendor of the stocks $68,671.34 in excess of their value.
The Journal Square Securities Company, an investment company, was formed early in 1929, under the laws of Delaware. At that time Bankshares Corporation of the United States, a New Jersey corporation, and the Bankstocks Corporation of Maryland, also investment companies, owned the controlling interest in the Journal Square National Bank of *Page 486 
Jersey City. The bank was under criticism of the federal authorities because too much of its capital was invested in its bank building, and the Journal Square Securities Company was formed to take over the building to ease the bank. The scheme was to sell the two hundred thousand shares of the Journal Square Securities Company to the depositors and stockholders of the bank and to the general public, and the hope was to realize enough to buy the bank as well as to promote the investment business. Cook was a high pressure stock salesman connected with Bankshares Corporation and it was
"Resolved, that Chester E. Cook be employed as general sales director for the entire issue of 200,000 shares and to take charge of all stock distribution and to assume all of the costs and expenses in connection therewith, including cost of headquarters, publicity, telephone, salesmen's commmissions, and to receive as compensation for his services fifteen per cent. of the proceeds of the sale of all such shares, settlement to be made on a weekly basis."
It was further resolved that the sales director be authorized to offer the shares to the depositors and stockholders of the bank at $9 a share for a fixed period and thereafter to the general public at $10 a share. The depositors and stockholders were not responsive and the general public was indifferent. Cook was able to sell but twelve thousand three hundred and thirty-six shares. It then was suggested — it is said to have been Cook's idea — that eighty-seven thousand five hundred shares of Journal Square stock be sold to Bankstocks at $9 a share ($787,500), and with the proceeds purchase from Bankshares, "through its proper sales agent" (Cook), sixty-three thousand "B" shares of Bankstocks at $12.50 a share ($787,500), and it was so resolved April 22d 1929; and that for his commission on the sale Cook take one-half in Journal Square shares at $8.50 a share, the other half in Bankstocks shares at $12.50 a share. Two days later Bankstocks resolved to purchase accordingly, and it gave its checks to Journal Square for $787,500 and received the stocks. Bankshares delivered to Journal Square sixty-three thousand shares of stock of Bankstocks and was paid $787,500 by *Page 487 
checks of Journal Square. The checks were cleared through the banks. Bankstocks shares were selling in the market at $12.50 plus a share and Journal Square had an apparent substantial asset to make its stock attractive to the speculating public. Then came the fateful October, 1929, crash. The three investment companies lingered for a short while and then collapsed. Receivers were appointed the following May. Cook had received his commission of $118,125 in shares of Journal Square and Bankstocks. The receivers say he did not earn it and was not entitled to it, that the directors misconducted themselves in giving him the stocks and are accountable to the insolvent estate, not for the shares which proved to be worthless, but for the face of the commission. We are not at this point concerned with the measure of damage.
Bankshares was the creature of William Harris, who, in the days of high stakes and wild speculation, forsook the law to engage in the then more hazardous, but supposedly more profitable, calling of financier. He and most of his associates were of good financial standing. Bankshares acquired the controlling interest in Bankstocks, and after the two obtained control of the Journal Square National Bank and the controlling interest in the Journal Square Securities Company, the directorates of the four institutions interlocked, with the management of all under the mastery of Harris. The directors of the Journal Square Securities Company — men of prominence and probity in the community — were but nominal shareholders selected for their prestige, vulgarly called window dressing, proud to be financiers and insensible of the part they were playing in the cupidity of others. We have no question of their good intentions nor that they served honestly and sincerely. They looked upon the sale of the stock of their company and the purchase of Bankstocks shares as an exchange — a swap — and they protested vigorously against a commission being paid to Cook, but were advised by their counsel (Harris) that Cook had the exclusive sales rights and that they were bound under their contract to pay. They debated long and earnestly, but eventually were convinced that whether Cook earned the commission or not he was, *Page 488 
nevertheless, entitled to it under an exclusive agency. It was an arguable question with them; it was by no means clear, that under the terms of the resolution an exclusive agency for the sale of the stock did not exist. Persuasive, from the practical viewpoint, was the fact that for its paper shares Journal Square was receiving dividend-paying shares of Bankstocks; Journal Square was getting something for nothing; it was a means of putting Journal Square on its feet, would give it a prospect, and unless the plan was carried through Journal Square was in imminent danger of vanishing. And Cook was in position to thwart the plan or obstruct it by suit for the commission or by creating undesirable notoriety to the discredit of the stocks. The directors took the course that pointed to success, and if the times of that day were still upon us, in all likelihood, they would have escaped the censure and odium of this suit. The question here is not whether Cook in fact and in law had an exclusive agency and therefore was entitled to the commission, but whether the directors acted in good faith, prudently, and with reasonable care and diligence, in concluding that he was and should be paid. The testimony is not satisfying that they acted in disregard of their duty, carelessly, wastefully and with indifference to their obligation as charged. On the contrary, we feel that in the trying situation in which they found themselves they exercised their best judgment, advantageously to the trust as they saw it, and more than that the law does not exact. In reCross, 117 N.J. Eq. 429. They will be absolved from liability as to this item.
Two days after Journal Square resolved to purchase from Bankshares sixty-three thousand Bankstocks shares at $12.50 a share, Bankshares resolved to sell sixty-three thousand shares at $11 a share. The resolution is silent as to whom the shares were to be sold. When the check of Journal Square for $787,500 for the sixty-three thousand shares was received by Bankshares, it was placed to the credit of Cook, and the sixty-three thousand shares of Bankstocks at $11 a share ($693,000) was charged against Cook's account, leaving to him a net profit of $94,500, which Cook got in cash. Five directors of Journal Square were directors of Bankshares and attended *Page 489 
the meeting at which the resolution to sell the sixty-three thousand shares at $11 a share was passed. The charge against them is that they knew, and against the remaining directors of Journal Square that they should have known, that the sixty-three thousand shares of Bankstocks could have been purchased from Bankshares at $11 a share and that consequently the difference of $94,500 was wasted. It is asserted that Cook's sales contract with Bankshares entitled him to the profit and that the manipulation of the sale through Cook's account was resorted to to put him in funds to organize and equip his selling forces to better promote the sale of stocks of Bankshares. Whether true or not is of no concern to Journal Square. It agreed to buy the stock from Bankshares, "through its proper sales agent" (Cook). If the money was wrongfully paid to Cook, Bankshares paid it and Bankshares is the injured party with the right of action against Cook. It is not disputed that Journal Square got what it bargained for, that Bankstocks shares were selling in the market for $12.50 a share, the price Journal Square agreed to pay. Assuming that the five directors of Journal Square as directors of Bankshares voted to sell the sixty-three thousand shares of Bankstocks at $11 a share, and that the remaining directors should have known it because, as it is contended, they could have demanded of Bankshares a copy of the resolution authorizing the sale, Journal Square could not have purchased the shares at the lower figure. Bankshares would have refused. As to that we need not speculate; it is a moral certainty the manipulators of Bankshares would not have consented, and Journal Square would have lost its only and imposing asset.
The remaining item of $68,671.34 is made up of the difference between the price which Bankshares paid for Bankstocks "B" shares and $11, the price which it charged the Cook account. We fail to see upon what theory in law this claim is based. It was Bankshares' privilege to buy Bankstocks shares as low, and to sell as high, as the traffic would stand. In the profit, Journal Square had no right of participation.
The bill will be dismissed. *Page 490